4-11-1053. Counsel, you may proceed. Your Honors, J.P. is a Court Counsel and I'm the job assortment for the employee. We are asking the Court to reverse the Commission's denial of both claims in this case. It's our position. It's our position that the Commission's decision represents the truest form of being against the manifest way to the evidence. I think Commissioner Molly Mason stated quite clearly the reasonable inferences that should have been drawn by the Commission and pointed out that the majority Commission's factual findings relied upon unreasonable inferences. I would ask the Court to think of the record as something of a box and what's in our box here today is the testimony of the petitioner, the medical records, Dr. Payne's testimony and nothing else. And we have cited some cases regarding some of the inferences drawn by the Commission in support of their finding that the petitioner's condition from the original work accident in March of 2008 did not continue to be a contributing cause of his condition as being unfounded because it relies upon surmise and conjecture. The Commission's conjecture that this person did not experience these symptoms because there are no employee records documenting that he removed himself from work or took time off of work because of these symptoms. That is, I think, the purest form of surmise and conjecture because the Commission is creating evidence where none exists and for that reason, that finding, that inference is contrary to that. How did they do that again? How did they create evidence that didn't exist? By the nonexistence of employment records documenting that he removed himself from work or took time from work because of his lower back pain. You'll recall that he testified that he would take himself off of work as he needed to. Because of that, the Commission discounted that testimony on the basis of nonexistent employment records in the record. So the records don't exist in the record, they were creating them out of thin air or suggesting that because they were not in the record, they did not exist. Well, let me ask you this. Didn't the Commission find significant that after the work-related injury, clearly in March of 2008, he received medical treatments until June 2nd, 2008, and on that date, he reported himself to a screening physician that he no longer had pain in the shoulder and only occasional pain in the back? And on the left side. And that was his last visit, correct? That is very true. The Commission noted that. The petitioner also testified that he became frustrated with the treatment he was getting. And he decided that since the physical therapy wasn't helping and he wasn't getting the type of response from his doctors that he did not feel that it was prudent for him or he was going to get any benefit from continuing. And so the Commission found that he reached MMI as of June 2nd, 2008? They did. However, that is, again, as I think I mentioned yesterday, maximum medical improvement does not break the chain of causation. You're in the same position. You were yesterday. Yes, I am. I thought I was having a flashback. Oh, you are correct. You are correct. And that is the reason why Dr. Payne's testimony is so important. Dr. Payne testified. And I don't believe that the Commission's decision on causation is entirely within the Commission's understanding. I believe that the causation question is, in fact, a matter of an expert's understanding. And the Commission did not even consider Dr. Payne's testimony. They didn't mention it. They didn't mention it. I imagine, I assume, and I know the rules, we assume that they considered it. They did not mention it. They did not reconcile it. They did not attempt to distinguish it from the facts of the case or point out perhaps errors. Dr. Payne addressed a number of the issues that the Commission was faced with. And he, in his medical testimony, said that it's about nine out of ten people will have a spontaneous improvement, but it doesn't end the condition. It does not end the condition. And that the violent episode that occurred in March of 2008, he felt continued to be the cause and the immediate cause of his problem. And that the Commission did not deal with. They attempted to deal with that by trying to find intervening events, which brings me to the repetitive trauma claim. The petitioner did have an episode where he was cutting down trees at work, whether it was volunteer or not is of no consequence, and I don't know why that was necessarily pointed out. But he was working and being paid for cutting down trees. He had an electrical shock sensation, which I would note the physical therapists in the original treatment in April and June and May of 2008 noted when he would try to run or something like that and he stepped down, he had electrical shock in his leg. It occurred again to the point where he could no longer avoid it, and he did go and see his doctor. He reported an accident of just working and his condition getting worse. And the Commission noted two events when he went to the doctor, one when he was washing his dog, one when he was bending over in the shower as intervening events. And I don't believe either of those things rise to the level of intervening events. I'm curious about one thing. Payne gave the only medical opinion on causation, correct? Is the Commission bound to accept that because it's the only medical testimony on causation? I'm curious about that. I think under these circumstances. As a matter of law? As a matter of law, no. I think that they can reject whatever opinion, any opinion or any testimony. Even if it's the only one. Even if it's the only one. However, I think in these circumstances, that decision is against the manifest weight of the evidence, and I think that Dr. Payne's opinion does explain the medical condition that is not within the knowledge of a lay person. And I don't believe that the condition is necessarily within the knowledge of the Commission just as a matter of law. So there's no testimony in the record that cutting down for his dog washing or bending over would break the causal connection, is that sort of what you're saying? No, there's no testimony that would break the causal connection, that's correct. There's testimony that they might be contributing factors, but not breaking the causal connection. And we cited the Fierke case in relation to the repetitive trauma claim because this court wisely rejected and reversed a Commission finding on a repetitive trauma claim where there was a very similar finding, where in that case the Commission noted the evidence of the employer that the employee did some work outside, some remodeling, but had no further description of that remodeling work in terms of frequency and what kind of stresses his body was placed under, and used that as a finding of an intervening accident as opposed to the testimony and the evidence regarding his work activities. And this court rightly rejected that Commission's finding for the logical reason that the Commission was actually basing their decision on having less knowledge of that home improvement work than they did about the work activities done by the injured worker at that time. And I think the same is true here. And I think you can, and the appellate court can here, reverse the Commission, and it's not just a matter of weighing the evidence differently. This is truly a case where the manifest weight of the evidence clearly would require a different result, and I think that that is what we're asking the court to do. This is a 201 decision, there was a dissenting... There was, Commissioner Mason. And I believe Commissioner Mason correctly points to the law that the petitioner is not required to prove that the work accident, either one of them, was the sole cause of the condition, only a cause of the condition. And I believe that the evidence, and the only evidence in the record regarding causation from competent sources, suggests in fact that that is the case. The original accident continued to be a contributing factor and a continuing cause, and in Dr. Payne's opinion, the principal cause or the only cause. We would ask that the court reverse the Commission's findings and find that they were against the manifest weight of the evidence, and remand the cause back to the Commission for further proceedings, since this wasn't an ITB. Thank you. Thank you, Counsel. Counsel, you may be removed. Good morning, Your Honors. May it please the Court, I am Bruce Magnuson, and I represent the Springfield Metro Sanitary District with regard to the first accident of March of 2008. Now, as you might expect, it is our position that the Workers' Compensation Commission majority reached the correct decision with regard to liability for treatment of the petitioner's condition as it manifested itself in May of 2009. We feel that the result is appropriate. On what basis did they reject the testimony of Payne, that arguably being the only medical evidence in the record on causation? On what basis did they reject it? I would imagine it's based upon reviewing the totality of the record. You go through the records from the Springfield Clinic, from the various providers. The initial round of care started with a visit to the emergency room in March of 2008. There was low back pain and some complaints of radiating pain. By the time he gets to Springfield Clinic and sees the nurse practitioner, the pain is no longer going down the leg, it's into the thigh. By the time of the last visit, the radiating pain is gone, the back pain has been greatly improved, the shoulder pain is gone, the terms used in the final discharge was a huge improvement in the condition, occasional low back pain, no radicular pain. That's the end of the care at that point. He starts his new job, or has started his new job, maybe three days after the original injury. Now that injury, and we agree, that was not disputed. That was an accepted injury, it was reported properly, treatment was authorized, conservative treatment was provided, which according to the medical records, provided a good result. So Mr. Sommer then returns to his job, he's now a maintenance mechanic for the sanitary district instead of a water plant operator. So he's working on all types of vehicles, as he says, he has to climb under them, he has to squat, he has to crawl, many things to work on anything at the district that has a motor. And so why wasn't this an aggravation of the pre-existing condition? So then he has this long break when nothing happens. He says he took a day off here and there, he had some pain, he didn't go to the doctor for it, there's no official time off for any of that. He continues to work. Then in May of 2011, I think this is the key thing, he testifies he spent seven hours cutting trees using a chainsaw, and according to his testimony he did it without break. Now, if any of you have used a chainsaw, you know it can be a heavy thing to use, especially if you go on it for seven hours. I think another point to note is that apparently Mr. Sommer felt good enough and capable enough physically to volunteer to help out the district with that activity and agreed to spend seven hours clearing brush and cutting wood. Now this was, he testified they were paid for it, it was a volunteer thing, but the company paid them overtime for doing it to save the district some money. So there he has, he spent seven hours doing the chainsaw work, and at the end of that time he told his supervisor he had to leave because the pain was so bad he was going to vomit. He went home, rested, did the other activities, after that he decides to return to the doctor. At that point he tells his physician when he returns on May 11th that the pain is the worst it's ever been. So I think it's a long period. He does throughout all of this though, he tells a consistent history of relating it all back to the original 2008 accident. There is a long gap. Do you agree with that? Yes, there is. It does refer to that later on, but there's a long gap. He does function normally, he's not seeking treatment, he's able to whatever place he has. He doesn't seek treatment, but his uncontradicted testimony is that from time to time he had flare-ups. Yes, that is true, that is not contradicted, but he was able to function and he could do his job. He was sort of a supervisor, I hope that whole supervisor issue again. How in the face of Dr. Payne's testimony, the sole causation testimony, and looking at these various flare-ups, cutting the trees and so forth, how does the commission conclude that it happened washing his dog? I'm not sure how they do that. I guess they were looking at the events that incited that one so they liked. Isn't that just arbitrary? I would contend that those two probably fall to the level, as Mr. Bichardi said, of contributing causes. They're rather minor. So you would agree that washing the dog should have just been a contributing cause? I think the commission reached the right result, but used the wrong incident. They should have focused on the tree trimming, which is a much heavier and more consistent and longer term activity. And that happened at work. That happened at work. Well, I'm curious, then, as to the deference to be accorded the commission's findings. The commission found that washing the dog was this intervening cause. You're jettisoning that from your arguments. I don't believe that that's the cause here. We're going to take the chainsaw part of it. What are you suggesting to us should be our standard of review in determining whether or not this chainsaw incident was an intervening cause? Are you suggesting that we're to assume that that was the cause and that we apply the manifest weight standard to that? That shows there is evidence to show that there was an intervening accident and that the weight of the evidence shows he was functioning, doing his job, working normally up to that point. He felt capable of volunteering for the work with the chainsaw. And after that, the condition becomes so bad, he finally returns for treatment. Clearly, he injured himself at that point. But there's nothing to connect that up. I mean, you have to concede. You've got medical opinion. I mean, we can't take judicial notice that working with a chainsaw. I mean, you're making a logical argument. But is there anything technically to establish that that was the cause? Dr. Payne, if you read his whole transcript of the deposition, does offer opinions basically for everybody. He was questioning him, saying that the condition was initiated in 2008, but yet the activities of 2009 contributed to it, aggravated it, caused the problems. So he does agree to it. Basically, the whole realm kind of throws in there and says, all of this has an impact on it. But we would just feel that based on the chronology of the case, how the evidence developed, what the medical evidence shows, that long gap between care when he was discharged in 2008 and when he finally went back in 2009, and his own testimony that his pain got so bad after being in a chainsaw incident, he felt like he could vomit and had to go home, shows that he did, in fact, aggravate that condition and bring it to need for further care at that point in May 2009. That's an intervening clause. Yes. Any other questions? I don't believe so. Thank you, Counsel. Thank you, Your Honors. Counsel, you may respond. May it please the Court, Counsel. My name is Lori Hiltabrain, and I represent the employer in this case with respect to the May 2009 accident. And I think Your Honor spoke earlier about kind of cutting to the chase, and that's what I'd like to do. Manifest weight is what you are looking at in this case. And with respect to the May 2009 accident date, it is very clear that the Commission didn't believe the petitioner. The Commission looked at and specifically noted, here's what the petitioner says, here's what the medical records say. They do not say the same thing. They are inconsistent. The employer for the March 2008 accident keeps talking about this chainsaw incident. Again, that assumes that this actually happened. The record is completely devoid of any mention of a chainsaw incident. In fact, even when... The medical records. The medical records. Not the record. The medical records. Testifies. Yes, I apologize. The petitioner's testimony is the only thing that we have. Once he sat down in front of an arbitrator, that is the first time he specifically told anyone, a medical professional or anyone in this case, about this chainsaw incident. If you look at the medical records themselves, the day after this alleged chainsaw incident occurred, he goes to his physician's assistant. Not an emergency room, but his physician's assistant who he had seen numerous times in the past. Instead of telling her, hey, the day before I was doing chainsaw for seven hours and I had so much pain I thought I was going to vomit from it, he tells her, no, I was squatting down and had so much pain I could hardly stand up. If you recall the petitioner's testimony at arbitration, the squatting down incident occurred at home. It was not a squatting down incident while he was doing the chainsaw. He specifically said, no, the squatting down was at home when I squatted down in the shower. Again, when he returns to either Dr. Bland or his physician's assistant just a few weeks later, he again fails to mention anything with respect to this chainsaw incident or for that matter any repetitive trauma. He goes back to indicating this all stems from my 3-12-2008 accident. Even more telling is the physical therapy record of 6-4-2009, the physiotherapy associates. At that visit he gives an onset of 5-10-2009, giving his dog a bath, bending in the shower, feeling excruciating pain in his back. There is nothing about anything occurring at work, repetitive, chainsaw, anything in May of 2009. The following day, I think it's important to recognize the chronology of the events, the following day the petitioner then goes into the employer and fills out the accident report. So he's seen at physiotherapy associates on 6-4-2009, on 6-5-2009 for the first time he goes into his employer and says, hey, I'm having back pain. The history is it's from crawling under cars, blah, blah, blah, nothing again about this chainsaw incident. The same day, he files his application for adjustment of claims on both of these issues. The employee's argument is, well, maybe he just couldn't verbalize what was going on. First of all, he's seeing a physician's assistant that he has seen numerous times in the past. And secondly, it's not believable that a person who is very succinctly able to describe an accident that had occurred a year before is unable to describe something that caused him so much pain that he was going to vomit the day before to his physician's assistant. That is unbelievable. And I think that was the crux of the Commission's decision with respect to the May 2009 accident. They simply did not believe him by balancing and looking at the medical records and balancing his testimony with what was not contained in those medical records. As far as this repetitive trauma thing, the employee points to some complaints that are found in Dr., actually I believe it's Dr. Western's record in July of 2009 and then maybe later in, I believe it was September of 2009. The fact of the matter is there is nothing in those records that somehow connects this back to a manifestation date of May 2009. That is not what the petitioner was complaining about in May of 2009 when he sought medical treatment. He was complaining of something that happened at home. He was not complaining of anything that happened at work. With respect to Dr. Payne's testimony, I will agree that he was given a lot of hypotheticals. He was given a lot of situations on whether or not he believed certain things were possible or whether they were not possible. When you look at his final opinion and his ultimate opinion that he expresses to a reasonable degree of medical certainty, it's found on the last page of his deposition. Do you have an opinion to a reasonable degree of medical certainty as to whether his activity, repetitive activities, contributed to his current need for the L5-S1 surgery? His answer, I think it all refers back to the March 12, 2008 incident. That is his opinion to a reasonable degree of certainty. The other opinions or possibilities, or the other situations or possibilities, that was not his opinion. His unequivocal opinion was that March 2008 was the accident date. And again, I would just bring you back to the manifest wait question. The Commission gets to decide. They are the ultimate judge of credibility. They get to decide who they believe. In this case, they did not believe the petitioner when comparing his testimony with the records medical records in this case. And they came down in favor of what the medical records actually were devoid of. And we believe their decision was correct. We would urge you to affirm the Commission's decision with respect to the May 2009 accident. Thank you very much. Thank you, Counsel. Counsel, do you reply? Your Honors, as you know, the second accident was alleged as a repetitive trauma claim. And I know the Court is aware of the rule that the petitioner or the employee is not required to prove their case at the notice stage. There was no specific accident that he identified when he was cutting the trees. He just noticed that that's when his pain increased. I would suggest to you that he did report a repetitive trauma claim timely. And he discussed the work activities that he was performing. I would also ask the Court to note that when he was having therapy in April of 2008, he actually told the therapist that he would crawl into cars and he was still having leg pain at the time. So he did mention his work activities to his therapist even before the May 2009 incident. There is no testimony that disputes or controverts his own testimony. In any fact in this case, I don't believe it was reasonable for the Commission to discount his testimony. The arbitrator had a chance to see him. I understand the Commission makes its own decisions there. But the arbitrator obviously found his testimony credible. I don't think credibility is really an issue here. The fact that he did not mention his continuing problems to the doctors when he went for his spider bite or other medical conditions is also, I think, a red herring issue as well. I think it's generally within the common knowledge of most people these days that when you go see a doctor for a specific event, you're seeing them for a specific event. And there are actually rules in the Commission regarding what doctors you may see. And the petitioner was seeing doctors for other conditions that were of immediate and pressing concern and not the ones who had been treated previously. We continue to believe the evidence and the only evidence that carries any weight demonstrates that the March 2008 accident continues to be the cause of the condition, that Dr. Payne did not say that these other incidents were possible, but certainly the work he was doing and the tree cutting, he felt were contributing factors to his problem and aggravated his symptoms. For that reason, we believe that the Commission's finding is not supported by any evidence in the record and it is based upon unreasonable inferences and speculation and conjecture as to what might have been in the record and what was not in the record. We'd ask the Court to reverse the Commission. Thank you. Thank you, Counsel. Paul, were your arguments in this matter this morning? It will be taken under advisement.